Good morning. My name is David Higgins. I live in Charlotte, North Carolina. I represent Vigilant Insurance Company of New York, a subrogate of Spartanburg Regional Medical Center. First, I'd like to thank the court for inviting me here today to speak with you all. I do appreciate it. It is an honor. Now, Vigilant Insurance Company has asked me to come here today and ask for two things. Ask this panel for two things. Number one, first, did the district court err when it entered a verdict that was inconsistent as a matter of state substantive law? That's the first question. The second question, if the answer to that is an affirmative, what is the proper remedy? Well, let me suggest there's an antecedent question, Mr. Higgins. You were there. We were not. Yes, sir. Based on my training and experience, which is not everybody's, I realize that. And this may well be a matter of local legal culture, which I respect. But my view of the matter is that a lawyer who hears this verdict read by the clerk within about a nanosecond says, Your Honor, may we approach the bench? And that didn't happen here. And I understand there's some facts relating to what the judge said to the jury. And apparently, at one point, she didn't want the jury to leave. But then at another point, she made statements that seemed to invite the jury to leave. So I guess what I'm getting at is, you say the first question is, did the court err in entering the verdict? But a lot happened before the court entered the verdict that I'd like to know about. So I guess, to put it plain, why didn't you say, Your Honor, may we approach the bench? Fair question. Is that not done in South Carolina? And I think that you hit the nail right on the head when you said, according to local custom and to what I'm used to. And I can tell you that as an attorney, and I've had the good fortune to appear in courts throughout the eastern United States. It's just the nature of my practice. And the way I've always conducted myself, and have, and will, and always will, for as long as I have this honor to continue to practice in front of courts, is to defer to the judge. To do what the judge asked me to do, when the judge asked me to do it. Here in this case. If the judge hadn't asked you anything yet, you hadn't dared to give a chance to respond to that request because you didn't make it. I tried cases in the District Court of South Carolina for a decade, and I would fully expect under the culture there as well, Judge Davis, for a lawyer to stand up and say, Your Honor, may we approach for a second? Before the jury got out of their seats and come and go, Your Honor, there's a problem. You said defer to the judge. The judge, you didn't give the chance for the judge to say anything for you to defer to the judge on. The way I've been trained, and the way I conducted myself at this trial was this. The judge took the verdict. The judge then addressed the jury, told the jury, go to the jury room. The judge then turned to us and said, Any objections? I then immediately stood and said, Yes, I have an objection. The judge then turned to defense counsel and said, Do you have any objections? She said, No. And then the judge said, And you will have the opportunity to address that in your briefs. And keep in mind, Your Honor, there's also... Did you have in mind the inconsistent verdict? Is that what your objection was, yes or no? Here's the honest statement. I knew that there was something wrong. That's what I knew, but you didn't know exactly, but you just knew something was wrong. I knew something was wrong. I heard that. Now, there's a reason why I'm here and you guys are up there. I knew something was wrong. I heard this verdict and I said, Wait a second. This isn't right. They found negligence, which is a necessary element. Negligence is damages. They didn't find any damages. So then the question is, Now, my mind's racing. What do I do? The judge is addressing the jury and the judge says two things to the jury, I think, which is important. First, she says, I think you all have done all you can do in this case. She says that to the jury. That doesn't mean anything. That's right, Your Honor. But then she says, Go on back to the jury room and you've read the record and you understand what happened there. And it is kind of confusing and no one knows why what happened happened. All we know then is what happened after. What do you mean you don't know why what happened happened? Well, because the judge said to the jury, Go back to the room and wait there. I have to talk to the lawyers and then you will be excused. And then I'll be back to and then I'll be excused. Meaning I know it said, And then you will be excused. And then you'll be. Oh, then I will excuse you. That's But the record reflects that they were. No, the record doesn't reflect that they were. The record has a notation from the court report in parentheses saying that. But I can't find where the judge actually excused him, although they were later excused. But her comment to the jury. Thank you for what you've done. You've done a good job. Go back to the jury room. I could find and read a verbatim. You know what it is. And she goes, I have to talk to the lawyers. Then I will. Then you will. Then you will be excused. I think is the way it reads. Yes, they aren't excused at that point. Do you think do you think they are excused at that point? Do all I can do is read the record. No, I'm saying it doesn't matter what I think. Well, it doesn't matter to me because I'm asking you. Do you do you think they were excused at that point? I think the record reflects they were discharged. So, yes, the answer to that is yes. The record clearly states at 6 21 p.m. they were discharged, but there's nothing in the record. That's not. But that's indication not from the judge. That's from the court reporter. But that comes after that statement by the judge. So the statement itself, I'm asking you, do you think the statement from the court saying step to the jury room? I will need to speak with the parties just one moment and then you will all be excused. Thank you. Have a great weekend. Do you think and then you will all be excused means you are now excused? Yes. No, I mean, exactly. Exactly. No, no, it's not confusing at all to me. It says you will then be excused, not that you are excused. I will need to speak to the parties first and then you will be excused. I don't want to beat this to death, but the judge is saying to everybody, to the jury, I need to talk to the people. You step back. I need to talk to them and then you'll be excused. They weren't excused. She also says have a good weekend because you may never call them back in. Well, the point is, is that we don't know. All we have is the record. But here's here's the point. I don't want to beat a dead horse. Let's take it one step further. Let's assume that the jury was in the in the in the room. She said, go and wait. The fact of the matter is, is I didn't ask her to ask the jury to continue to deliberate. That's there's no question about it. The question is, why didn't you say to her at that point, your honor, that we do have a concern and that concern I'm putting in front of you is an inconsistency. We have to we had the jury. I think that's it, your honor. I would like to talk to you about it and we have to resolve that before the jury is sent home. But there's an easy answer to that. I'm not that smart. As I mentioned to the court, so I knew there was something. Let me say that that's our problem. No, that's not. That's not your problem. But here's the answer to that. It doesn't matter. It doesn't matter because the court that verdict was inconsistent. It's a matter of law. None of the rules position is that North Carolina law imposes a sua sponte duty on a trial judge to superintend the verdict without any input or request by the parties. No, your honor. OK, then I'm I'm missing something here, but that's you keep saying it doesn't matter. It doesn't matter. But if something's rotten in Denmark, it matters and it matters that counsel for the party bring to the court's attention that something's rotten in Denmark. And I did. And then I followed her instructions. I objected to the verdict. And then she said, brief it. I did. Now, here's the thing. I mean, that verdict, the federal rules, the federal rules dictate what the federal judge should do. Once that verdict comes in, it's inconsistent. We don't look at South Carolina state procedural law to determine what the federal judge should do. The federal judge has to take that verdict and look at it and say, is this verdict consistent? I understand that. But certainly you can waive objections by not raking them properly on on that inconsistency. Not this one. No, no, no. No. And that's about this one, because now we're still talking about the first issue before we go back to the other. We'll have questions for that, too. Clearly, your honor, under 49 B, I can waive my I can absolutely 100 percent wait. No question. And there's no question but that. If I was smarter and I would have recognized what the inconsistency was, I would I could have stood up and said, your honor, did you object to the charges the judge gave in this? The charges were absolutely 100 percent accurate. We did not object. You don't object to them. Well, let me ask you. And you didn't object to the verdict for. Yes, we did. No, no, not the verdict. Vertiform was absolutely fine. But but now this is as it seems to me, I'm slowly at this position unless you respond to it. Now I have some contrary comments for the other side. It seems to me that what the jury did is completely consistent with the charge that you agreed to and you say is the law, because those charges allow for the jury to believe a person can be negligent and then they have to find damages. That's exactly what the charge says. No, they don't. Well, I'm sorry, with all due respect. Well, what those charges are is no, no, no, no, no, no, no. I'm going to read you the charge as I think I have a copyright. And this is in the second part. She sort of broke it up into three parts of negligence, really. But this is like builders negligence, I guess builders negligence. And at the end of that charge, that part, she says any failure to exercise due on the part of McKinney would constitute negligence. That's what she said. You said that's the law is such negligence did exist. I'm paraphrase a little bit. And that fact is for you to decide your next question would be, is the negligence the cause of the damages? If you look at their verdict, that's exactly what they said. Yes, there was there was negligence, but no, no damages as to negligence per se. This is exactly what she charged. If you find that McKinney failed to building code, that McKinney is considered to be negligent per se. She's already said to the jury, if you find a violation of the code, that's negligent per se. And I take my word and I'm reading it to you accurately. If you find he is per se, vigilant need not further demonstrate a breach of duty. However, you must still determine whether vigilant has suffered any damages and whether those damages were approximately caused by McKinney's negligence per se. So she actually her charge, you said it's completely proper. I say it's a fair statement of the law in which she makes it clear to the jury, you have to find duty, breach of duty and proximately caused damages. And that's what the jury did. They found and she told them, if you find a breach of that duty of care in those second two instances, they are negligent. That's what the jury said. But then she said, you have to go on and find damages, which they did not find. So that does not complete any recovery for you. If I may, Your Honor, I disagree with those charges. What do you disagree? I disagree with this. You can the charges. Wait a second. Do you disagree with what I just read you verbatim? What I disagree with your interpretation, you are construing the word damages to include the amount of damages. You can have damage. No, no, no, no, no, no, no. Listen to me. You have it exactly wrong. I'm construing what negligence is, what the court said negligence is. The court said negligence is the breach of duty. You may. You said they were proper. Listen what she said. I'm not talking about damages. She says if you find McKinney's failed to comply with the Spartanburg city building code, including international building code as adopted by the city of Spartanburg and to that, the applicable portion of the building code was meant to prevent the type of harm which occurred in this case. McKinney is considered to be negligent per se. She's telling the jury they are negligent if you find that. What's there to be construed about that? But there's two things there, your honor. There's negligence per se. I'm sorry I'm running out of time. Right. And there's negligence. She basically says you have to find, and I've quoted it three times in my brief, the jury charges you're doing, and with all due respect, is you are pulling sentences from the jury charge. If you read the jury charges as quoted in my brief, they clearly Let me say this. What's required is that there's no set absolute words that a judge has to use in charging, but it has to be that the charge reflects to the jury and informs the jury what they have to find. She told them that. She told them that. The fact is that it didn't allow a recovery for you was based, is reconcilable, easily reconcilable, that they didn't think you bench with all due respect saying here's what this jury could have done in face of this verdict. That's what we're supposed to do. That's what we're supposed to do. If we can reconcile the verdict, the charge, that's what we're supposed to do. If the state substantive law provides you the road map with which to do it. Here there is the state substantive law does not provide the federal bench the road map with which to reach that conclusion. The road map that the state South Carolina state substantive law says this verdict as determined by the highest court of this state. Let me give you a minute. You reserve seven minutes. Do you want to take some of that time? I'm trying to answer your questions and you're answering good questions. And I just we're going to get you have reserved time. But if you want to take a minute or two of that time to answer right now, you can use two minutes and then we say five. How about that? Thank you, Your Honor. It's very clear. The rule of law is really, really simple. You have to look at the state substantive law to determine whether the verdict is inconsistent. If the state substantive law, for example, the Atlas case, it provided the federal court the road map through which you could reconcile a seemingly inconsistent verdict, that being the issue of punitive damages. The South Carolina state substantive law said, here's how you do that. Here, the South Carolina Supreme Court has said, you don't do that. The South Carolina Supreme Court has rejected. It went through a very long analysis in Stevens saying all these things that we're talking about here today with the jury could have done this, and the jury could have done that. That's all well and good. But that's not the law of the state of South Carolina. The law of the state of South Carolina is when this very jury verdict form is returned, it is inconsistent as a matter of law. Discussion stops there. The federal judge is not imbued with the power or the authority to go behind and try to make a And that's what she did here. The very verdict form that the Stevens court considered and had in front of it was the very verdict form that the federal judge in this case had before her. It's the very- Did the court have the charges from the Atlas case in front of it, the charges? If I may, Your Honor, the charges, and I've pointed out three times, at least in my brief, where the judge clearly lays out, you have to find four elements. No, no, no. That's not, that's my question to you is, did the judge have in front of her the so you could compare the verdict in the Atlas case to the charges in the Atlas case? Charges are the same. Duty, breach, causation, damage. Oh, no, no. Wait a second now. Is that in the record? No, the record is clear that what the charges in this case establish, in this case- No, I was asking about the charges in the Atlas case. I don't, no. Your answer to that is no, Your Honor. Thank you. Thank you very much. And we'll try to keep your time straight to get your full allotment. Yes, Ms. Wooten. Good morning. May it please the Court. Kim Wooten from Greenville, South Carolina, on behalf of McKinney's Incorporated, the appellee in this case. I think that Judge Davis began this case by asking the question that we believe is the most important question in this case. I'm sorry. Can you pull that microphone a little closer, please? Thank you. I'm sorry. My husband says I talk loud enough without anything, but can you hear me better now? Okay. The central issue in this case, in our view, is whether or not Mr. Higgins did what he's required to do under either federal or state law. If you really look at Judge Child's order, the key to her order is contained on page 358 of the joint appendix. And that's where she says the Court is not required to reject an inconsistent verdict where there has been no objection on the grounds of inconsistency or no request that the matter be submitted to the jury for reconciliation before the Court excuses the jury from the case. Now, whether or not that's a federal procedural question or a state procedural question, either state procedural tenets or federal procedural tenets require that a specific objection be made and that the case be resubmitted to the jury. It was incumbent upon Mr. Higgins at the time, at the very second that that verdict was entered, to, under local practice, that's the way we do it there, as you asked Judge Davis, we would ask the judge for a moment while the jury's still in there at the bench, walk up and say, Do you normally do plaintiff's work or defense work? I do both, Your Honor. I'm a construction litigator, so... I know you're a construction litigator, but I ask you... Either way, we've done both. It surprises me, I think, following what Judge Davis said, I would have expected a lawyer who got what he thought was the verdict and then to get zero damages to be screaming, quite frankly, and to be in front of the judge going, Your Honor, there's a serious problem here, and by the way, and they start throwing out all kinds of bases for it, about 95% of them go away when you have time to think about it, but isn't that what you would expect a lawyer to get up and go, Your Honor, there's a problem here, and before we let that jury go, we need to figure out how we get our hands around that problem. Isn't that what you would normally expect to have? Is that what you would have done had the roles been reversed? Oh, absolutely, and when I went back and started looking at what had happened, obviously it was shocking for all of us, really, because I'd never been in that situation, but I do know that you can't discharge a jury, and when you look at what the law requires under either state or federal procedure, that's what you have to do. Let me ask you this. I want to take you to something more fundamental. Yes, Your Honor. I read your brief, and I'm having trouble completely understanding some assertions you make. Do you assert there's no proof of damage to Spartanburg Regional Center? Is that what you assert? What I'm asserting, Your Honor, is that there's no proof of the monetary damages. Oh, another word. Wait a minute now. You say there was damages, but you assert there was no proof of valuation of those damages? That's correct, Your Honor. What I meant— How is that possible? There wasn't. There absolutely was not. Didn't the insurance company testify what they paid? They testified that they had paid out checks. To Spartanburg Regional? Absolutely. So, by the way, why isn't that circumstantial evidence of the valuation? Unless you want to claim the insurance company to go around writing checks for damages that don't happen, I'm not going to ask for a show of hands in the courtroom who gets that kind of check from an insurance company, but I just think that is—I'm just going to tell you my own view is that is supposed to misrepresentation of the record. If they put up testimony that there were damages there, and Mr. Head said he saw the damages— He said he saw physical damage to certain equipment that he couldn't— He stole water and sat on top of the CT, didn't he? He did, but he— Okay, now wait. And then you have an insurance company that said, we paid them an insurance claim, and here's how much we paid them. That's circumstantial evidence. You may not like it, but that absolutely is circumstantial evidence of the amount of damages. Well, Your Honor, certainly in my mind, I didn't mean to misrepresent anything to the court. I know that, but I'm saying how can you make that statement in light of what I'm saying to you? That—Don't you agree with me that what the insurance company paid in this chain of events for the damages incurred by the insured, that is at a minimum circumstantial evidence of the monetary value of the damages incurred? What else? Isn't it? I agree that there would be some evidence. Well, then there is. Take a deep breath, Ms. Wooten. I think you've got a better answer for Judge Shedd than that. He thinks you gave me the wrong one. All right. Well, Your Honor, I mean, our point was that nobody from the hospital had ever said that they had been damaged in any way. It's a subrogation case. So why does it matter? Right. Does it matter? What do you mean? Yes, they did say they'd been damaged. The guy, the head of construction said he saw the water flooding the building and on top of the equipment. That's damaged. He did, but he didn't. He wasn't even able to identify what the equipment was. Ty, he wasn't a medical expert. So you think in this case, it was necessary to have somebody from Spartanburg Hospital come in and testify that they had suffered damages? The subrogate steps into their shoe. They do. But if the hospital hadn't paid anything out, then they haven't stepped in their shoe. Here's the problem you have is, then that is just collateral source rule, which you can't use in South Carolina. Your claim is since the hospital didn't pay anything, they really didn't have damages since they recovered and didn't pay a cent out. See, I thought your answer was that the damages were somewhere between one dollar and some larger figure, and there was not proof to a reasonable certainty. I thought that was your argument. It is. Your Honor, that is our argument in our brief. But I think what Judge Shedd was arguing was a different question. No, it's not. No, it's not. Oh, okay. No, I don't think you argue that. I think you can make an argument that they did not prove, the jury could have found they didn't prove their damages sufficiently. That's exactly right. I thought your point was, you said there's no evidence of Spartanburg, of the value of Spartanburg damages. No evidence. I thought that's what you said. Well, Your Honor, what I had said later in the brief, and that was probably inartfully worded. What I meant was there was no evidence. Yeah, now let's go back to what you meant, because that's not what you said. What I meant... Let me say this. I think it's absolutely clear in response to a question, Judge Davis, that's right. Just, it could be, you could say there's testimony in the record, but the jury has the absolute right to reject it. That is absolutely true. But I took it, you said there was no evidence. I can't put my fingers on it right now. But, and you say Judge Childs properly ruled that Mr. Head could offer no testimony on the issue of the amount of the hospital damages. Now, I just want to get this straight. Do you make a claim that there is no evidence as to damages? I don't think that's right. Well, what you just read, Judge Shedd, is exactly what I said before. My claim was Mr. Head was not allowed... Say, I looked at page 63 to 73 in the record. I can't find that's what the judge said there. For what it's worth, I'll let you check that later. But I can't even... I went back and read that, and I can't find that at page 63 to 73. Well, again... Let's just say this. Do you think there was damage, there was evidence in the record as to the value of the damages suffered by the hospital? Yes, Your Honor. And I would concede that. And I think I did it later in the brief where I said the jury could have found that Mr. Marks didn't have the credibility or blah, blah, blah on the amount of damages. So, yes, I do. But I think back to the issue that... Why did you think it was important, then, for Spartanburg to call for an employee of Spartanburg to come? Because of the amount of damages. No, but there was evidence... Listen, I thought you conceded there was evidence of damages. Now, I thought we'd shift it to valuation. Do you concede that on this record there is some evidence offered on the amount of damages? Yes, sir. So if that's true, why are you insisting somebody from Spartanburg come? We just thought that was another factor that the jury could have considered. But based on what? What is that relevant to? I'm just asking, just so I understand your argument. Does it matter if Spartanburg or Vigilant has put in evidence, which, by the way, the jury can't ignore, but they've put in evidence on the amount of damages, why were you insistent that Spartanburg come and testify on it? It mattered to us. It did? Yes, because... Tell me what legal principle that's relevant to. Because from a subrogation standpoint, if Spartanburg Regional never paid out a dime to anybody, then how can Vigilant say they are subrogated to a claim that they've offered no proof they paid? That was my point. But I thought they said they cut checks. They cut checks to Spartanburg Regional, but Spartanburg Regional didn't have anybody to say, we ever paid for that. We have never replaced that. They didn't have anybody to even say that CT scanner was ever replaced. They just had an insurance adjuster to come in there and say, we paid for it. That was our problem. Your problem was that Spartanburg, your theory of the case was Spartanburg got money, but never fixed the equipment? Oh, no, that was not our theory of the case. That was just an argument that we made. One of the very many arguments that we made in the case. Right. So back to the issue of waiver. We believe that's the most important issue in the case. And we believe, regardless... When was the jury excused in this case? It is not clear from the record when they were excused, to be very honest. Um, but I do believe that the jury was there, um, after, um, Judge... Do you believe that you had, both sides had an opportunity to approach the bench and lay out any concerns they had before the jury was excused? There is no doubt in my mind, Your Honor. Who excused the jury? Um, the record is not clear who excused them, but I believe that they were not excused until after the parties argued. That's my memory. Now, it's not on the record. How far is the jury room from the courtroom? Very, very close. As a matter of fact, if this were our courtroom, our federal courtroom, the jury room is right off the side, probably within... And they go out a separate exit? They do. To the parking lot or whatever?  And? They go out and around in a separate exit to the front. And you can, you can say as an officer of the court, to your knowledge, the district judge never actually went in there and said goodbye to them? Or you just don't know? I just don't know the answer to that. Um, but I feel comfortable that both... Is that the judge's normal practice, to your knowledge? I don't want to go outside the record. Oh, no, that's okay. Is she one of the judges who typically will go in? Of course, she'd already said have a good weekend while she was still on the bench, but some judges go in and thank the jury. To be honest, I don't know Judge Child's practice on that. Okay. This was my first case to try in front of her, so I'm not sure... And she's relatively new. Relatively, although she... I'm sorry. At the federal district court. Yes, sir. I was going to say, although she did have previous... I used to follow the same procedure she did, but I would just say as a matter of course, what I would say is go back, you're not excused, I'll talk to the lawyers, and if I don't need you, I will send the bailiff back, or the court security officer, to tell you you may go home. I would say that on the record. I don't sort of ding her for that, because I think from this, no matter what we all say about what I say could and should have happened, I don't think there's any question that on this transcript as we see it, the jury was not excused, because she said I have to talk to the parties, and then you will all be excused. So they don't know they're excused yet, because they don't know she's talked to the parties, number one. And number two, there is some time right in there that the lawyers can stand up and say, we need to talk to you a moment, please. Could we approach? Every judge knows that. And I will say, too, in response to a question you had earlier, Judge Shedd, or maybe it was Judge Davis, but there was time. As we were standing there, all the parties had some time to sort of gather their thoughts. She didn't just go, hey, this one, blah, blah, blah, blah, blah, blah, blah, blah, blah. She gave us some time to stand there and sort of contemplate what we were going to do. Let's just say there hadn't been a waiver. Is there an inconsistency here? You just say there hasn't been a waiver. No, I said just forget, leave aside the question of waiver. I want to talk to the substance of the inconsistent verdict. Is there an inconsistent verdict in this case? Why or why not? No, sir, not under my reading in the South Carolina cases. While Stevens does say that South Carolina is going to hold an inconsistent verdict where you have a finding of negligence with zero damages, there are two things that distinguish that case. First is the jury charge that Your Honor was reading from was very different in the Stevens case. There was— Is it in the Atlas? Or is it in any case—it might have been in the Atlas, it may have been Stevens. Is the charge in this record, in this record, is the charge from that case in this record? The charge from that case is not in this record, Your Honor. Not on the record. It is in the cases, but not on the record. Now, in addition, in the Stevens case— I find the most curious aspect of this regarding the charge and the verdict form is why you would ever say, if any, in regard to damages in a negligence case. I mean, as a defense attorney, that's my dream. That's your dream? It's my dream. You were standing there thinking, I can't believe he's going to let her say that. That's correct. So you don't let her charge the law improperly? No, no, no. That's not an improper charge, Your Honor. If you look at the Bench v. Davidson case, there is a, I guess— But it seems to me it is absolutely setting the judge up for a problem, though. Because it creates this kind of problem. The charge should really—the perfect charge is you have to find these elements. Then if you find these elements, you must next decide damages. Right. You must give at least $1, but it would otherwise be determined by the record. Isn't that the appropriate charge in a negligence case? Well, it certainly would be better. I will tell you that the charges that we used are from the standard charge, you know, the South Carolina— If this is them, I suspect somebody better go do some work on them. It is them. Well— It really is. Our standard charges— Then you need a super standard charge. You know, as a matter of fact, Your Honor, I have another case coming up with a negligence issue, and I am going to use or at least propose that a different charge be used because of that reason. If not, we'll leave that. But the other thing that could have been done in this case is, I believe, is that if we had That's the way you're supposed to do it, right? Three different elements. The whole problem is there's no such thing as negligence. There's a duty, there's breach of duty, which proximately causes damages. That's what we're talking about. The whole idea that negligence exists somewhere in the ether or in the universe has gotten a lot of lawyers and a lot of judges in trouble over the many, many years. Right, and I think probably that's what this jury was looking at when they made the leap from the negligence to the no damages. Is it really the case that an inconsistent verdict is a matter of substantive law? I'm sorry, sir? Do you agree that the question whether there's an inconsistent verdict in a federal diversity case is an issue of substantive law? I do not agree. And as I said in my brief, I actually don't agree with that. And that's why I think that the standard of review here is abuse of discretion and not de novo. How can it not be a question of substantive law? You have the state Supreme Court of South Carolina saying it is simply inconsistent with South Carolina law. And then talks that in order to find in favor of the plaintiff under South Carolina negligence law, the jury in this case had to have found the plaintiff approximately caused damages from the defendant's negligence. How can that not be a substantive principle of law? And Judge Keenan, I understand where you're coming from there. Saying it's inconsistent to attempt to construe the verdict as an indication that the jury found a failure of proof. Right. And I do agree that that part of it. However, the way the Stevens case and the Bench case after it read, it really creates sort of a hybrid between procedure and substantive. Because when you look at this... You don't have to make that distinction to win this case, though, do you? I'm sorry, Your Honor? I don't understand why you're even going here on this issue. I'm just going there because I was asked the question. Yeah, I brought it up. I mean, I don't think it's really important in this... Well, I'm saying I don't think it's your winning argument. I don't either. But I went there because Judge Davis wanted to know the answer to the question. Do you think the question is, isn't inconsistency a question of inconsistency between the verdict and what's been charged? That's where the inconsistency is questioned. Not as to state law. It's another question of whether or not the charges reflect state law. But I think you could actually, if you don't object to the charges, you could have state law. I mean, the jury charge that actually could not be state law. I think you haven't objected to them. I believe that's correct. No, I'm saying one hasn't objected to them. So then the question of inconsistency is, has the jury... What the jury's done, is that inconsistent with the instructions they've been given? And in this case, that's why it seems to me it's not really... I've struggled with this, but it strikes me it's not substantive law. I know that may sound odd. It's just, does that verdict match up with what they were instructed to do? Now, by the way, there could be another question of, are the charges correct? But I think that's taken care of by virtue of the charge conference and objection to charges. If you don't object to a charge, the judge gives a charge, and you lose, then that's just tough, isn't it? It is, Your Honor, and that's what happened. The question is now, what we have to look at then, just to set... And isn't it true in this case that... You don't really make this argument particularly, but doesn't that verdict form reflect... It's not inconsistent at all with the way the jury was charged. The jury was told the defendant can be negligent. You can find that, which by the way, that's exactly what they did. Yes. We don't know which theory on any one of those theories of negligence. And then the jury went on to follow the judge's instructions to then look at what damages, if any, and found zero. That's right. Now, it seems to me that that doesn't even cause... In this case, that doesn't even cause an inconsistency with substantive state law, right? Because state law says, basically, you cannot have a recovery in a negligence lawsuit unless you prove duty, breach of duty, and damages. And when you look at that verdict, which verdict is consistent with the way the charges were given, it reaches that conclusion, which is the right conclusion under South Carolina law. Is that your argument? It is. And that's why, Your Honor, I had brought up the differences in the jury charge that were given in the Stevens case and in the Atlas case. May I just finish my answer before I... You can finish that, yeah. But the review that the court does under the Atlas analysis has to do with all that. Reconciling everything. The jury charge, the jury verdict form, and when it's done in this case, then there isn't an inconsistency under South Carolina law. That was our argument. Thank you very much. Mr. Higgins, I think you have at least five minutes left, I think. We'll give you five minutes. Yes, sir. Your Honor, I'm wrestling with a couple things. The first is this. If I could call your attention to the Joint Appendix, page 39 and 40, you appear to believe that a finding of zero damages or no damages consistent with the charge the jury was given. The jury was given three very expressed charges. One is negligence. The first one is negligence in the Joint Appendix 39. And it says specifically, in order to prevail in a negligence claim, vigilant must show that McKinney's one owed a duty to Spartanburg. I'm truncating the charge. That McKinney's breached that duty. And that the breach was the proximate cause of a or an injury to Spartanburg Regional. So it says four things. To find negligence, you have to find four things. Duty, breach, negligence. I know, but you're kind of wasting your time because she also charges what I said. OK. But she also says, OK, now she also says to establish negligent construction, the resultant must be shown. Negligence is not actionable unless it is approximately causes a plaintiff's injuries. She also goes on to say causation, in fact, is proved by establishing the plaintiff's injury. And if I may just finish. Can I say this to you? That's fine. That's the only point you want to argue. You can argue, but that doesn't address at all what I said, because she she gives them three different ways basically to find negligence. And they found one. We don't know which they found. That's absolutely 100% correct. And so what this one would be enough. One would be enough. But your honor, here's what I'm suggesting. OK. You are saying that these that these charges, if you pull one or two lines from this charge, the jury could have done X. Right. That's basically what you're saying. That is not permissible. This court is not allowed to look behind the curtain and try to guess what the jury could have done. It is not. If I may. No, no, let me say, no, no, just wait one second. That is absolutely not correct. If the jury charge has not been objected to and if the jury is instructed on how they will go about finding it and they follow those instructions, there is no guess. They have to follow all of the instruction, but the jury can't follow all of the instructions when the instructions point in different directions. That's just shared is is absolutely correct. Under our precedence, the jury is presumed to follow the law. And when a lawyer permits the court to give instructions which point in different directions, then however, the jury decides the case will will be sustainable. Here's here. I don't understand how you. Here's here's the problem with that. Again, what you're doing is you're trying to figure out a way in which this jury could have reached this conclusion. And what you're basically saying, if I may, is if they followed these particular sentences, they could have done this. These unobjected to instructions. Exactly. Now, remember, these obstruct these objections are not objectionable. I mean, they weren't objected to because that's they're the standard instructions that are given in the state of South Carolina. There may be a problem with that. But the point of the matter is, is if the jury would have found it followed all of the instructions, there's no way it could have found negligence. Now, what we're doing here and what this court is doing here is what the judge did. The judge said, wait a second. I'm going to I can look behind the curtain, find a way to reconcile this verdict. But the verdict is inconsistent on its face. Now, here's the I don't think the instructions and the verdict sheet are behind the curtain. I think they're I think they're on the state center. They're absolutely right. And you know what they say? They say exactly what Stephen said. They're exactly like Stephen's. If I may, but we don't have the charge in Stephen and the charge in Stephen's could have been identical. It could have been right. It could have been. And what we're talking about here is could have would have should have. And all we know is that this particular verdict form has been declared by the South Carolina state. No, no, no, no, no. This goes back to the very question. You are absolutely wrong. I believe to say the jury did not follow what they were told. And part of it, they listen. And she said there's negligence. And now I want to tell you about builders negligence. And then she says, I want to tell you about negligence per se. And in both builders negligence and negligence per se, she shifts a little bit as to what has to be shown as to negligence. And the jury found it. She says to establish negligence in construction, vigilant must approve three essential elements. Listen to me. Listen to me. Stop. Stop. Page eight. Any failure to exercise due care on the part of McKinney's in the course of the scope of his employment in the construction of the building would constitute negligence. That's what she says. And then she goes on to talk about you didn't have to show damages. Do you see what we're doing here, though, your honor? You're talking about some questions. You're talking about some sentences. I'm talking about another. And what you're saying is that you say this much. I think you're missing the point. The fact that this charge is susceptible of having different sentences. That's not our fault. We did not come up with the charge and we didn't object. We didn't object to the charge. I didn't object to the charge. I didn't object to the charge because the charge requires in order to find negligence, you have to find four things, including damage. That's how you read the entire charge. That's how she reads it here. Negligence. Generally, approximate cause of an injury. Let me give you. Let me give you. I'll try not to interrupt you. And I'll give you. No, I'm gonna give you 30 seconds without being interrupted. And you'll let you finish your argument. We obviously disagree on that, your honor. And that doesn't bode well for me. I'm just. This is the very type of exercise which the courts have cautioned appellate courts and to try to find a way. The state substantive law on this is clear. I'll leave that at that. The other thing is this. I want to point out about this issue of waiver. On page 20 of my brief, I point out and it's clear a party can waive the right to object to inconsistencies in a general verdict with special interrogatories under FRCP rule 49b if it does not object on the ground, that ground before the jury's discharge.  Upon the verdict is plain error. So here. At least according to the South Carolina State Supreme Court, if this case was handed before the South Carolina Supreme Court and said, is this verdict inconsistent as a matter of law? They would say yes. So. I'm not saying I'll follow that state Supreme Court for a long time. And I'm not sure you could say that positively, maybe. Right. Well, I will say I'm not sure. I'm just saying that's the record we have. That is the law. Again, thank you so much for allowing me to appear before you today. I enjoyed myself. Thank you very much. Do you need a break? You need a break. I will step down Greek Council and go directly to the final case.
judges: Dennis W. Shedd, Andre M. Davis, Barbara Milano Keenan